# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF IOWA
### CENTRAL DIVISION

| | |
|---|---|
| **MITTERA GROUP, INC.**<br><br>**Plaintiff,**<br><br>v.<br><br>**CURT CALLEN and**<br>**SANDY ALEXANDER, INC.,**<br><br>**Defendants.** | Case No.<br><br><br><br>**VERIFIED COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Mittera Group, Inc. for its Verified Complaint against Defendants Curt Callen and Sandy Alexander, Inc. states as follows:

## PARTIES

1. Plaintiff Mittera Group, Inc. ("Mittera") is an Iowa corporation with its principal place of business in Des Moines, Iowa.

2. Defendant Sandy Alexander, Inc. ("Sandy Alexander") is a Delaware corporation with its principal place of business in Clifton, New Jersey.

3. Curt Callen ("Defendant Callen") is an individual and citizen of New Jersey.

## JURISDICTION

4. This Court has original subject matter jurisdiction over the claims asserted under 28 U.S.C. §§ 1331 and 1367.

5. This Court also has original subject matter jurisdiction over the claims asserted under 28 U.S.C. § 1332, because there is complete diversity and the mater in controversy exceeds the sum or value of $75,000.

6. The Southern District of Iowa is otherwise a proper venue for this action, because Defendant Callen signed a contractual agreement with Mittera, an Iowa entity, and therefore could reasonably foresee being subject to suit in Iowa in the event of any dispute related to the underlying contract.

## BACKGROUND

7. Mittera was founded in 1974 and employs approximately 200 employees nationwide.

8. Mittera is a multi-platform marketing and media company, offering analytics services including segmentation, predictive modeling, campaign execution, multi-channel attribution, and consulting to customers nationwide.

9. Employees in Mittera's sales division oversee customer relationships and project execution.

10. To facilitate client relationships, employees in Mittera's sales division have access to substantial proprietary information, including but not limited to customer lists; supplier, vendor, and customer contact information and specifications; buying and budgeting information; pricing information; margins and job costing information; financial and accounting information; and business plans and strategies.

11. Mittera considers this information to be confidential and trade secret information and derives economic value from this information's secrecy.

12. Because Mittera derives economic value from the secrecy of its confidential information and trade secrets, it takes reasonable steps to maintain the information's secrecy, including by requiring employees to sign employment agreements containing confidentiality and

non-solicitation provisions, requiring employees' computers to be password protected, and limiting access to sensitive information to specific individuals within specific departments.

13. For example, employees in the sales division do not share customer information—only sales employees with the underlying relationship have access to respective customer information.

### Defendant Sandy Alexander

14. On information and belief, Defendant Sandy Alexander is in the business of, among other things, providing print and digital marketing services to customers nationwide.

15. Sandy Alexander is a competitor of Mittera or conducts a business similar to that of Mittera.

### Defendant Curt Callen

16. Defendant Callen became employed by Mittera on or about June 10, 2020, as a Vice President of Sales.

17. As Vice President of Sales, Defendant Callen had substantial contact with and knowledge of Mittera's customers.

18. With respect to his position, Defendant Callen's LinkedIn Profile states:

> As a VP of Sales, I have been dedicated to constructing and sustaining customer relationships with brands that lead the way in luxury fashion, jewelry, cosmetic, home furnishings, and automotive. My core values have always been focused on the customer and providing the absolute highest level of customer service, which has been instrumental in my success in building long term client relationships.

A true and correct copy of Defendant Callen's LinkedIn Profile is attached hereto as Exhibit 1.

19. As a regular part of his employment, Defendant Callen had extensive access to and knowledge of Mittera's confidential information, including but not limited to customer lists;

supplier, vendor, and customer contact information and specifications; buying and budgeting information; pricing information; margins and job costing information; financial and accounting information; and business plans and strategies.

20. At the time he was hired, Defendant Callen had no knowledge of Mittera's confidential information or trade secrets. Once employed, Defendant Callen learned of and became knowledgeable about Mittera's confidential information and trade secrets.

21. On or about June 10, 2020, Defendant Callen signed an Employee Confidentiality and Non-Solicitation Agreement (the "Agreement"). A true and correct copy of the Agreement is attached as Exhibit 2.

22. The Agreement's Confidentiality provision provides:

**Confidential Information**. The Employee understands and acknowledges that during the course of employment with Mittera, the Employee will have access to and learn about Confidential Information, as defined below.

a. Confidential Information Defined. For purposes of this Agreement, **"Confidential Information"** includes, but is not limited to, all information not generally known to the public, in spoken, printed, electronic, or any other form or medium, relating to: business plans, strategies, operations, documents, know-how, trade secrets, computer software, applications, systems, supplier information, vendor information, financial information, accounting information, legal information, marketing information, pricing information, credit information, personnel information, sales information, customer information, and customer lists of the Mittera Group, or of any other person or entity that has entrusted information to Mittera Group in confidence. Confidential Information also includes other information that is marked or otherwise identified or treated as confidential or proprietary, or that would otherwise appear to a reasonable person to be confidential or proprietary in the context and circumstances in which the information is known or used. However, Confidential Information shall not include information that is generally available to and known by the public at the time of disclosure to the Employee, provided that the disclosure is through no direct or indirect fault of the Employee or person(s) acting on the Employee's behalf.

b. Disclosure and Use Restrictions. The Employee agrees and covenants: (i) to treat all Confidential Information as strictly confidential; (ii) not to directly or indirectly disclose, publish, communicate, or make available Confidential Information, or allow it to be disclosed, published, communicated, or made

available, in whole or part, to any entity or person not having a need to know and authority to know and use the Confidential Information in connection with the business of the Mittera Group and, in any event, not to anyone outside of the Mittera Group except as required in the performance of the Employee's authorized employment duties or with the prior consent of Mittera' Legal Department (and then, such disclosure shall be made only within the limits and to the extent of such duties or consent); and (iii) not to access or use any Confidential Information, and not to copy any documents, records, files, media, or other resources from the premises or control of Mittera, except as required in the performance of the Employee's authorized employment duties or with the prior consent of Mittera's Legal Department (and then, such disclosure shall be made only within the limits and to the extent of such duties or consent).

The Employee's confidentiality obligations under this Agreement regarding any particular Confidential Information shall continue during and after the Employee's employment with Mittera until the time that the Confidential Information has become public knowledge other than as a result of the Employee's breach of this Agreement or breach of those acting in concert with the Employee or on the Employee's behalf.

. . .

23.    The Agreement's Non-Solicitation of Employees provision provides:

**Non-Solicitation of Employees**.    Because of the Mittera Group's legitimate business interest in maintaining a stable workforce, and in exchange for the good and valuable consideration offered to the Employee, the Employee agrees, for a period of one (1) year after the end of the Employee's employment with Mittera, not to directly or indirectly solicit, hire, or recruit any employee or contractor of the Mittera Group to work for another company.

24.    The Agreement's Non-Solicitation of Customers provision further states:

**Non-Solicitation of Customers**.    The Employee understands and acknowledges that the Employee will have to and will learn about much of the Mittera Group's Confidential Information and will have access to and contact with Mittera Group's customers. The Employee further understands and acknowledges that: (i) the Mittera Group's relationships with its customers are of great competitive value; (ii) the Mittera Group has invested and continues to invest substantial resources in developing and preserving its customer relationships and goodwill; and (iii) the loss of such customers relationships or goodwill will cause significant and irreparable harm to the Mittera Group.

Because of these legitimate business interest, and in exchange for the good and valuable consideration offered to the Employee, the Employee agrees, for a period of one (1) year after the Employee's employment with Mittera ends, not to directly or indirectly solicit or meet with the Mittera Group's customers for

purposes of offering goods or services similar to or competitive with those offered by the Mittera Group.

25. On or about December 30, 2022, Defendant Callen resigned from Mittera, effective January 2, 2023.

26. At the time of his resignation, Defendant Callen told Mittera that he was taking a position with Sandy Alexander.

27. Defendant Callen specifically stated that Sandy Alexander was giving him a book of business, and he would not be calling on Mittera customers while working for Sandy Alexander.

28. In the days following his resignation, however, Mittera discovered that Defendant Callen had been taking Mittera's business information prior to his resignation and is now servicing Mittera customers in his work with Sandy Alexander.

29. Specifically, Defendant Callen forwarded numerous proprietary documents related to Mittera client projects to his personal email address, including but not limited to estimates, pricing information, and job specifications for clients Stellantis, General Motors, and Jonathan Adler Enterprises LLC ("Jonathan Adler").

30. This information constitutes Confidential Information, as defined under the Agreement.

31. With respect to Jonathan Adler, Defendant Callen engaged in systematic efforts to unlawfully re-direct business to Sandy Alexander while he was employed with Mittera.

32. Specifically, in December 2022 just before his resignation, Defendant Callen incurred thousands of dollars in purported business expenses while entertaining a Jonathan Adler representative, which artificially inflated pricing quotes on Mittera's current projects and resulted in Jonathan Adler transferring certain business away from Mittera.

33. Defendant Callen also forwarded all Mittera's confidential information regarding Jonathan Adler to his personal e-mail account, including but not limited to pricing information for 2023 and information relating to a large quantity of paper stock that Jonathan Adler housed with Mittera.

34. Shortly thereafter, that paper stock was transferred from Mittera to Sandy Alexander.

35. Jonathan Adler has now transferred its print and digital work to Sandy Alexander.

36. On February 10, 2023, Mittera sent Defendant Callen a letter informing him that he had violated the Agreement through his use and disclosure of Confidential Information and solicitation of customers. A true and correct copy thereof is attached as Exhibit 3.

37. In response, on February 22, 2023, counsel for both Defendant Callen and Defendant Sandy Alexander (together "Defendants") sent a letter to Mittera, denying any liability under the Agreement. A true and correct copy thereof is attached as Exhibit 4.

38. Importantly, in their February 22 correspondence, counsel for Defendants conceded that Defendant Callen brought Mittera clients to Sandy Alexander. *Id.* ("This is true despite the fact that all of the customers you list were brought to Mittera by Mr. Callen, who maintained relationships with them during his time with Mittera.").

39. Counsel for Defendants further stated that Defendant Callen is managing a project on behalf of Mittera client, Stellantis, apparently disputing that any work on projects with Mittera clients "secured by Sandy Alexander well before Mr. Callen joined [Sandy Alexander]" is covered by the Agreement. *Id.*

40. Counsel for Defendants also conceded that Defendant Callen sent Mittera customers' information to his personal email address. *Id.*

41. Though it provided Defendant Callen with notice of his obligations under the Agreement in its February 10 letter, Mittera learned that Defendants solicited three Mittera employees to join Sandy Alexander between February and April 2023.

42. On March 20, 2023, counsel for Mittera sent a letter to counsel for Defendants, again identifying specific violations of Defendant Callen's Agreement, demanding that Mittera be permitted to forensically examine Defendant Callen's electronic devices, requesting written confirmation that Defendant Callen would refrain from engaging in any further activities in violation of his Agreement, and demanding that Defendant Sandy Alexander provide written assurances that it instructed Defendant Callen to abide by his obligations to Mittera and that it would not tortuously interfere with Mittera's business relationships or solicit Mittera employees. A true and correct copy of thereof is attached as Exhibit 5.

43. Counsel for Defendants responded on March 24, 2023, but did not provide these assurances. A true and correct copy of their letter is attached as Exhibit 6.

## COUNT I
### MISAPPROPRIATION OF TRADE SECRETS (18 U.S.C. § 1836)
### (ALL DEFENDANTS)

44. Mittera realleges and incorporates by reference each of the preceding allegations as if fully set forth herein.

45. As a former employee of Mittera, Defendant Callen owed a duty to maintain the secrecy of Mittera's confidential and trade secret information.

46. Information relating to Mittera's customer lists; supplier, vendor, and customer contact information and specifications; buying and budgeting information; pricing information; margins and job costing information; financial and accounting information; and business plans and strategies derive independent economic value, actual and potential, from not being generally

known to, and not being readily ascertainable by, a person able to obtain economic value from its disclosure or use.

47. Because Mittera conducts business across the United States, its trade secrets are related to services used in, or intended for use in, interstate or foreign commerce.

48. Mittera took reasonable efforts, as alleged above, under the circumstances to protect the secrecy of their confidential and trade secret information.

49. On information and belief, Defendant Callen acquired, used, or disclosed to Defendant Sandy Alexander Mittera's trade secrets, which he acquired by, among other means, misrepresentation, theft, or a breach of his duty to maintain the secrecy of Mittera's confidential and trade secret information.

50. Defendant Callen will inevitably disclose Mittera's trade secrets to Defendant Sandy Alexander because Defendant Sandy Alexander and Mittera are competitors, Defendant Callen is employed in a position with Defendant Sandy Alexander that is similar or identical to the position he held with Mittera, and on information and belief, Defendant Sandy Alexander has not taken adequate steps to prevent Defendant Callen from using or disclosing Mittera's trade secrets.

51. On information and belief, Defendant Sandy Alexander has acquired or used Mittera's trade secrets, which were acquired by, among other means, Defendant Callen's misrepresentation, theft, or breach of his duty to maintain the secrecy of Mittera's confidential and trade secret information.

52. Mittera has been and will be damaged by the misappropriation or threatened misappropriation of its confidential and trade secret information.

WHEREFORE, Mittera respectfully requests that the Court enter judgment against the Defendants, jointly and severally, for damages as proven in a trial on the merits, together with

interest, and costs as provided under federal law, and for such other relief as deemed appropriate by the Court.

## COUNT II
## MISAPPROPRIATION OF TRADE SECRETS (Iowa Code Chapter 550)
## (ALL DEFENDANTS)

53. Mittera realleges and incorporates by reference each of the preceding allegations as if fully set forth herein.

54. As a former employee of Mittera, Defendant Callen owed a duty to maintain the secrecy of Mittera's confidential and trade secret information.

55. Information relating to Mittera's customer lists; supplier, vendor, and customer contact information and specifications; buying and budgeting information; pricing information; margins and job costing information; financial and accounting information; and business plans and strategies derive independent economic value, actual and potential, from not being generally known to, and not being readily ascertainable by, a person able to obtain economic value from its disclosure or use.

56. Mittera took reasonable efforts, as alleged above, under the circumstances to protect the secrecy of their confidential and trade secret information.

57. On information and belief, Defendant Callen acquired, used, or disclosed to Defendant Sandy Alexander Mittera's trade secrets, which he acquired by, among other means, misrepresentation, theft, or a breach of his duty to maintain the secrecy of Mittera's confidential and trade secret information.

58. Defendant Callen will inevitably disclose Mittera's trade secrets to Defendant Sandy Alexander because Defendant Sandy Alexander and Mittera are competitors, Defendant Callen has taken a position at Defendant Sandy Alexander that is similar or identical to the position

he held with Mittera, and on information and belief, Defendant Sandy Alexander has not taken adequate steps to prevent Defendant Callen from using or disclosing Mittera's trade secrets.

59. On information and belief, Defendant Sandy Alexander acquired or used Mittera's trade secrets, which were acquired by, among other means, Defendant Callen's misrepresentation, theft, or breach of his duty to maintain the secrecy of Mittera's confidential and trade secret information.

60. Mittera has been and will be damaged by the misappropriation or threatened misappropriation of their confidential and trade secret information.

61. Defendants' misappropriation or threatened misappropriation of Mittera's confidential and trade secret information was willful and malicious, entitling Mittera to exemplary damages and further entitling Mittera to its actual and reasonable attorney fees as provided under Iowa law.

WHEREFORE, Mittera respectfully requests that the Court enter judgment against the Defendants, jointly and severally, for damages as proven in a trial on the merits, together with interest, costs, attorney fees, exemplary damages as provided under Iowa law, and for such other relief as deemed appropriate by the Court.

## COUNT III
### MISAPPROPRIATION OF TRADE SECRETS (Iowa Common Law)
### (ALL DEFENDANTS)

62. Mittera realleges and incorporates by reference each of the preceding allegations as if fully set forth herein.

63. As a former employee of Mittera, Defendant Callen owed a duty to maintain the secrecy of Mittera's confidential and trade secret information.

64. Information relating to Mittera's customer lists; supplier, vendor, and customer contact information and specifications; buying and budgeting information; pricing information;

11

margins and job costing information; financial and accounting information; and business plans and strategies derive independent economic value, actual and potential, from not being generally known to, and not being readily ascertainable by, a person able to obtain economic value from its disclosure or use.

65. Mittera took reasonable efforts, as alleged above, under the circumstances, to protect the secrecy of his confidential and trade secret information.

66. Defendant Callen acquired information relating to Mittera's trade secrets through the result of a confidential relationship.

67. On information and belief, Defendant Callen has used Mittera's trade secrets to assist in and further the expansion of Defendant Sandy Alexander's business, to the detriment of Mittera.

68. On information and belief, Defendant Sandy Alexander received Mittera's trade secrets without authorization from Mittera and used Mittera's trade secrets without authorization to further the expansion of its business, to the detriment of Mittera.

69. Mittera has been and will be damaged by the misappropriation of its confidential and trade secret information.

WHEREFORE, Mittera respectfully request that the Court enter judgment against the Defendants, jointly and severally, for damages as proven in a trial on the merits, together with interest and costs, and for such other relief as deemed appropriate by the Court.

### COUNT IV
### BREACH OF CONTRACT
### (DEFENDANT CALLEN)

70. Mittera realleges and incorporates by reference each of the preceding allegations as if fully set forth herein.

71. The Agreement is binding and enforceable.

72. Mittera has performed all its obligations under the Agreement.

73. On information and belief, Defendant Callen breached the Agreement by disclosing Mittera's Confidential Information to Defendant Sandy Alexander.

74. Defendant Callen has breached the Agreement by soliciting Mittera employees to work for Defendant Sandy Alexander.

75. Defendant Callen breached the Agreement by soliciting Mittera customers to bring their business to Defendant Sandy Alexander.

76. The multiple and continuing breaches by Defendant Callen of his contract has caused and continue to cause damages to Mittera.

77. The Agreement requires Defendant Callen to reimburse Mittera for its attorney fees incurred in this action.

WHEREFORE, Mittera respectfully requests that the Court enter judgment against Defendant Callen for damages as proven in a trial on the merits, together with interest, costs, attorney fees, and for such other relief as set forth in the contract and as deemed appropriate by the Court.

## COUNT V
## INTENTIONAL INTERFERENCE WITH CONTRACT

**(DEFENDANT SANDY ALEXANDER)**

78. Mittera realleges and incorporates by reference each of the preceding allegations as if fully set forth herein.

79. Mittera had a contract with Defendant Callen that in part forbade him from disclosing confidential information and soliciting employees and customers of Mittera.

80. Defendant Sandy Alexander knew of the contract at all materials times.

81. On information and belief, Defendant Sandy Alexander intentionally and improperly interfered with the contract by impliedly or expressly authorizing Defendant Callen to use and share Mittera's confidential information in his employment with Sandy Alexander.

82. On information and belief, Defendant Sandy Alexander intentionally and improperly interfered with the contract by impliedly or expressly authorizing Defendant Callen to solicit Mittera's employees for employment at Defendant Sandy Alexander.

83. On information and belief, Defendant Sandy Alexander intentionally and improperly interfered with the contract by impliedly or expressly authorizing Defendant Callen to solicit Mittera's customers to conduct business with Defendant Sandy Alexander.

84. Defendant Sandy Alexander's interference caused Defendant Callen to breach his contract with Mittera or caused Mittera's performance of the contracts to be more burdensome or expensive.

85. Mittera has been or will be damaged by Defendant Sandy Alexander's interference.

WHEREFORE, Mittera respectfully requests that the Court enter judgment against Defendant Sandy Alexander for damages as proven in a trial on the merits, together with interest and costs, and for such other relief as deemed appropriate by the Court.

**COUNT VI**
**CIVIL CONSPIRACY**
**(ALL DEFENDANTS)**

86. Mittera realleges and incorporates by reference each of the preceding allegations as if fully set forth herein.

87. Defendants have committed the wrongs against Plaintiffs alleged in Counts I through V above.

88. On information and belief, each Defendant participated in a conspiracy to commit the wrongs against Mittera alleged in Counts I through V above.

89. Mittera has suffered damages as a result of Defendants' conspiracy.

WHEREFORE, Mittera respectfully requests that the Court enter judgment against Defendants for damages as proven in a trial on the merits, together with interest and costs, and for such other relief as deemed appropriate by the Court.

### COUNT VII
### BREACH OF FIDUCIARY DUTY
### (DEFENDANT CALLEN)

90. Mittera realleges and incorporates by reference each of the preceding allegations as if fully set forth herein.

91. A fiduciary relationship existed between Mittera and Defendant Callen.

92. Defendant Callen breached his fiduciary duty by sharing Mittera's confidential information with his new employer, Defendant Sandy Alexander.

93. Defendant Callen breached his fiduciary duty by soliciting customers of Mittera to do business with his new employer, Defendant Sandy Alexander.

94. Defendant Callen's breach of his fiduciary duty caused damage to Mittera.

WHEREFORE, Mittera respectfully requests that the Court enter judgment against Defendant Callen for damages as proven in a trial on the merits, together with interest and costs, and for such other relief as deemed appropriate by the Court.

## COUNT VIII
## INJUNCTIVE RELIEF
## (ALL DEFENDANTS)

95. Mittera realleges and incorporates by reference each of the preceding allegations as if fully set forth herein.

96. The Agreement provides:

**Remedies**. If the Employee breaches or threatens to breach this Agreement, the Employee agrees that the Mittera Group shall be entitled to injunctive or other equitable relief, in addition to other available remedies, without having to show any actual damages, and without having to post a bond.

. . .

97. Defendant Callen's breach of his Agreement entitles Mittera to an injunction.

98. The actual or threatened misappropriation of Mittera's trade secrets by Defendants entitles Mittera to an injunction under federal law.

99. The actual or threatened misappropriation of Mittera's trade secrets by Defendants entitles Mittera to an injunction under Iowa law.

WHEREFORE, Mittera respectfully requests that the Court enter a permanent injunction from the date of the judgment against Defendant Callen, prohibiting him from further violations his agreement for an additional year, against Defendant Sandy Alexander, prohibiting Defendant Sandy Alexander from accepting customers, employees, or confidential information in violation of the Agreement, and prohibiting Defendants from misappropriating Mittera's trade secrets, together with attorney fees, costs, and for such other relief as deemed appropriate by the Court.

## DEMAND FOR JURY TRIAL

Mittera hereby demands a jury trial on all issues in this action.

Respectfully submitted,

*/s/ Brandon Underwood*
BRIDGET R. PENICK
BRANDON R. UNDERWOOD
DEVAN C. RITTLER-PATTON
Fredrikson & Byron, P.A.
111 East Grand Ave., Suite 301
Des Moines, Iowa  50309
Telephone:  (515) 242-8900
Email: bpenick@fredlaw.com
       bunderwood@fredlaw.com
       drittlerpatton@fredlaw.com

ATTORNEYS FOR PLAINTIFF

# VERIFICATION

STATE OF IOWA            )
                         ) ss.
COUNTY OF POLK           )

**Ann Kendall**, being first duly sworn upon oath, states as follows:

1. I am the General Counsel at Mittera Group, Inc., and I am personally familiar with the facts contained in and the documents attached to Plaintiff's Verified Complaint. I have read the Verified Complaint and attached exhibits, and I am familiar with the contents thereof. The matters stated in the Verified Complaint are true to the best of Plaintiff's knowledge, except such matter as are stated to be upon information and belief, and as to those matters, Plaintiff believes them to be true.

2. The exhibits attached to Plaintiff's Verified Complaint are true and correct copies of the original.

Dated: April 24, 2023               Mittera Group, Inc.

                                    */s/ Ann Kendall*
                                    _____
                                    Ann Kendall
                                    General Counsel
                                    Mittera Group, Inc.